UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JAMES KILGORE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:14-CV-292-DCR-REW |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION[1] |
| LADONNA THOMPSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants Sandy Colyer, Lawrence Betts, Joel Helmburg, and Dale Martin moved for summary judgment.[2] DE ##43 (Colyer Motion); 45 (Betts / Helmburg / Martin Motion).[3] The

---

[1] The Court issues this Recommended Disposition pursuant to the District Judge's referral. DE #22 (Order).

[2] The Court previously dismissed all claims against LaDonna Thompson, Susan Wilhoit-Oliver, Mrs. D, Robert Belen, Eddie Montgomery, and the Kentucky Department of Corrections. DE #9 (Memorandum Opinion & Order). The undersigned also previously recommended summary judgment in favor of Paula Auxier and CCS regarding Kilgore's medical claims. DE #46 (Recommended Disposition). Judge Reeves, at screening, dismissed Kilgore's claims "regarding the execution of his sentence" but ordered a response on his "allegations regarding his medical care and food service provided at the prison[.]" DE #9, at 2.

[3] The posture as to Defendant Martin is a curious one. A summons issued to Martin was returned unexecuted. *See* DE #33. The record reflects no Martin answer to the Complaint. Despite no evident Martin service (or waiver) or responsive pleading, Attorney Brown purports to move for summary judgment on Martin's behalf. DE #45. [Martin, however, did not seek an extension of time to file. DE #42 (Betts and Helmburg Motion).] The Court can find no case in which an unserved defendant moved for summary judgment (although there are some where a court granted it regardless). However, a defendant may move for summary judgment before filing an answer. *Tackett v. Payne*, 172 F.3d 873, at \*2 (6th Cir. 1998) (table) ("Tackett also argues that defendants should not have been granted summary judgment because they never filed an answer to the complaint. There is no requirement that an answer be filed prior to the filing of a dispositive motion. A motion for summary judgment may be filed 'at any time.'" Fed. R. Civ. P. 56(b).") (affirming grant of summary judgment). By moving under Rule 56, the Court deems Martin to have waived service and so will include him in general consideration of Kilgore's

Court gave *pro se*[4] Plaintiff, James Kilgore, time to respond, but he did not.[5] The motions stand ripe for review. The Court **RECOMMENDS** that the District Court **GRANT** Defendants' motions (DE ##43, 45). There is no genuine dispute as to any material fact, and Defendants are entitled to judgment as a matter of law. Kilgore fails to put forward sufficient (any) proof regarding the objective and subjective elements of his Eighth Amendment claims. *See Farmer v. Brennan*, 114 S. Ct. 1970, 1977 (1994).

I.  **BACKGROUND**[6]

In July 2014, Kilgore, then a prisoner,[7] filed a Complaint (later amended) pursuant to 42

---

claims and the dispositive motions. Martin actively endorsed the motion by supplying a supportive affidavit. DE #45-2. Given the clarity of the summary judgment analysis here, and because Plaintiff did not shoulder the service burden due to his *pauper* status, the Court does not further analyze the potential for dismissal premised on a failure to properly serve. *See Moore v. Thomas*, 653 F. Supp. 2d 984, 1003-04 (N.D. Cal. 2009) ("Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) Plaintiff has been provided an opportunity to address the controlling issues."). All *Moore* requirements exist here. *See also Elliott v. Morgan*, 111 F. App'x 345, 346 (5th Cir. 2004) (finding no error where district court "award[ed] summary judgment to the unserved defendants" after Plaintiff "received adequate notice of the constitutional issue dispositive of his . . . claim").

[4] The Court evaluates a complaint by a *pro se* plaintiff under a relatively lenient standard. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.").

[5] Failure to respond is not itself grounds for the Court to grant summary judgment because summary judgment by default is improper. *See Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (*per curiam*); *see also Green v. United States*, No. 11-59-HRW, 2013 WL 209019, at *2 (E.D. Ky. Jan. 17, 2013). Upon consideration of "the motion and supporting materials," the Court can grant summary judgment if otherwise proper. Fed. R. Civ. P. 56(e)(3). A failure to respond is consequential, though, if the precipitating motion has merit under the summary judgment rubric.

[6] Under the relevant standard, the Court assesses the facts in favor of Kilgore, the non-movant. *Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) ("[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.") (citation and internal quotation marks omitted).

[7] Kilgore advised, in January 2015, that he "was released on parole[.]" DE #34 (Notice). "[A] plaintiff's status as a 'prisoner' is to be determined as of the time he brought the lawsuit." *Dixon*

U.S.C. § 1983. DE ##1 (Complaint); 5 (Amended Complaint); *see also* DE #18 (Motion to include Martin in the Complaint, setting out generally the claims against and alleged authority of Martin). The suit stems from alleged events during and conditions of Plaintiff's incarceration at Blackburn Correctional Complex (BCC) (and possibly Roederer Correctional Complex, *see* DE #5, at 6). Kilgore makes numerous disjointed claims throughout the pleadings. As relevant here, he contends that Colyer, Betts, and Helmburg (1) failed to provide a nutritional diet or sufficient calories, (2) did not wear gloves or hair nets, (3) served rotten and stinking or unfit food (including once when Plaintiff allegedly found chewed up sunflower seeds in his food), and (4) did not follow the Warden's orders regarding food service complaints. DE #5, at 3-4. Plaintiff alleges that Martin supervises "Programs Including Medical and the Aramark Corporation," and failed generally to follow the Warden's directions, failed to ensure Plaintiff's medical needs were met, and failed to adequately supervise Aramark, the kitchen staff, and food preparation. DE #18. Construing Kilgore's complaint liberally, the Court characterizes Kilgore's diet and food service allegations as against the moving defendants generally (with Martin in a supervisory capacity). Kilgore's medical complaints, *see* DE #46 (recommending dismissal), do not apply to these defendants (save for possibly a lone supervisory allegation against Martin, which the Court will address separately).[8]

Defendants Colyer, Betts, Helmburg, and Martin filed the instant motions for summary judgment. Defendants assert that Kilgore failed to exhaust administrative remedies, DE ##43-1,

---

*v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). While release perhaps moots Kilgore's request for an injunction, his demand for unquantified "damages and compensation" (DE #5, at 10) remains. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Zeune v. Mohr*, No. 2:14-cv-153, 2015 WL 3544662, at *2 (S.D. Ohio June 4, 2015).

[8] Counsel's choice to spend the bulk of DE #45 addressing inapplicable medical claims is perplexing.

at 4-6; 45-1, at 9-11, and that they are not otherwise liable on Plaintiff's food service claims under the applicable standard, DE ##43-1, at 7-10; 45-1, at 11-12. Kilgore, though served, did not respond. The Court has considered the full briefing and record.

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356; *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). The Rule "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp.* at 106 S. Ct. at 2552.

If the movant bears the burden of persuasion at trial, "that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 2556 (citation omitted) (Brennan, J., dissenting); *see also Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (noting that, when the movant also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it") (citation and internal quotation marks omitted). "If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex Corp.*, 106 S. Ct. at 2557 (Brennan, J., dissenting) (emphasis in original).

A fact is "material" if the underlying substantive law identifies that fact, or the element it concerns, as critical. *Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be

suitable for admission into evidence at trial. *Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

Substantively, in response to a well-supported defense motion in the context of a § 1983 deliberate indifference claim, a plaintiff "'must demonstrate a genuine issue of material fact as to the following two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law.'" *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005)).

## III. ANALYSIS

Kilgore asserts, under a liberal construction of his complaint, that Colyer, Betts, and Helmburg acted with deliberate indifference under 42 U.S.C. § 1983[9] when they (1) failed to provide a nutritional diet or sufficient calories, (2) did not wear gloves or hair nets when serving food, (3) served rotten and stinking food (including once when Plaintiff found chewed up sunflower seeds in his food), and (4) did not follow the Warden's orders regarding food service complaints. DE #5, at 3-4. Kilgore's allegations against Martin are supervisory in nature. DE #18.

The Sixth Circuit has succinctly stated the contours of the legal framework for Eighth Amendment conditions of confinement claims, such as Kilgore now brings:

> An Eighth Amendment conditions of confinement claim also contains both an objective and a subjective component. . . . The objective component requires the

---

[9] Section 1983 provides a federal cause of action against state officials for the deprivation of federal constitutional rights under color of state law. The Eighth Amendment prohibits cruel and unusual punishments and is applicable to the states. *Robinson v. California*, 82 S. Ct. 1417, 1420 (1962). As relevant here, the Eighth Amendment obligates the states to "provide humane conditions of confinement[,]" including "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care[.]" *Farmer*, 114 S. Ct. at 832.

> plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him the minimal civilized measure of life's necessities. . . . The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs.

*Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (internal quotation marks and citations removed); *see also Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). Per the cases, deliberate indifference, in turn, has subjective and objective components. *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006).[10] Plaintiff must show both that the defendants acted with a sufficiently culpable state of mind and that the alleged wrongdoing was sufficiently objectively harmful to establish a constitutional violation. *Id.* at 423-24.

"In considering the subjective component, [the Sixth C]ircuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Perez*, 466 F.3d at 424; *Rouster*, 749 F.3d at 446 (setting out test). Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 117 S. Ct. 1382, 1391 (1997)); *see also Farmer*, 114 S. Ct. at 1980 (adopting "subjective recklessness" as the test for deliberate indifference);[11] *Wilson v. Seiter*, 111 S. Ct. 2321, 2324 (1991) (The

---

[10] Case law does not consistently use the same terminology, but the objective component of deliberate indifference substantially dovetails with the sufficiently serious deprivation inquiry. *See, e.g.*, *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Daniels v. Mahone*, No. 1:14-CV-2753, 2015 WL 3619529, at *2-*3 (N.D. Ohio June 8, 2015).

[11] For the subjective component of deliberate indifference, the standard of "deliberateness tantamount to an intent to punish" is "not good law." *Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014). Instead, as set out above, "deliberate indifference . . . is satisfied by something less than acts or omissions for the very purpose of causing harm or with

Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities, are sufficiently grave to form the basis of an Eighth Amendment violation." (internal quotation marks and citations omitted)).

"[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). However, "courts may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious[,]" *Warren*, 576 F. App'x at 553 (internal quotation marks omitted) (quoting *Hope v. Pelzer*, 122 S. Ct. 2508, 2514 (2002)), or in other "usual ways, including inference from circumstantial evidence." *Id.* (quoting *Farmer*, 114 S. Ct. at 1981).

Presenting no evidence in response to well-supported motions, Kilgore utterly fails to put forward sufficient proof to survive summary judgment regarding the objective component or meet the requisite subjective culpability standard. He does not, with proof adequate under Rule 56 and the applicable legal standards, show that Colyer, Betts, Helmburg, and/or Martin "subjected [him] to specific deprivations that are so serious that they deny him the minimal civilized measure of life's necessities . . . [or] acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455. The Court can find nothing in the record (again, Kilgore presents no responsive evidence) to suggest that Defendants acted with the requisite bad intent to support a deliberate indifference claim or that Kilgore suffered any objectively serious injury. Specifically, and primarily, Kilgore does not show that any moving defendant acted with reckless disregard to a perceived substantial risk of serious harm.

---

knowledge that harm will result." *Farmer*, 114 S. Ct. at 1978.

First, on the alleged failure to provide a nutritional diet or sufficient calories, Plaintiff claims that "Defendants Sandy Colyer, Lawrence Betts, [and] Joel Helmburg[] have failed to provide a nutritional diet with the required calories on the menu[] ever since my first day at Blackburn Jan 7 2014. They serve half the portions required by the menu." DE #5, at 3. Kilgore later claims that Aramark (not a defendant) "[h]as served so little food that I lost 75 LBS in three months." *Id.* at 4. Colyer avers that she is the Food Service Director at BCC and an Aramark employee. DE ##43-1, at 2; 43-2 (Colyer Affidavit), at 1.

Prisoners must receive "a proper diet." *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). Food satisfies this requirement if it "meet[s] nutritional and caloric requirements for humans." *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002). Kilgore's categorical, unspecific statement utterly fails to tender sufficient proof that any defendant violated his rights or did not provide him a proper diet or sufficient calories. He makes no particular allegations regarding what food was—or was not—actually served, what the (allegedly unmet) requirements for food service were, what the menu contained,[12] how many calories per day he received (and how many he should have received), and the portion size received (and that should have been received). He makes no claim to a specialized diet. Further, he makes no effort to meet the subjective component of the claim.

Additionally, Kilgore alleges no specific personal involvement of any defendant, instead making blanket allegations against Colyer, Betts, Helmburg, and Martin collectively. Betts and

---

[12] Colyer helpfully attaches Aramark menus for KDOC. DE #43-2, at 4-7. Because Kilgore provided no details in his allegations, the Court cannot compare his claims to the tendered menus. The menus state that the meals provide an average of 2800 calories per day, which exceeds a generally applicable caloric requirement for humans. *See, e.g.*, *Heard v. Finco*, No. 1:13–CV–373, 2014 WL 2920479, at *1 (W.D. Mich. June 27, 2014) ("[W]hen Plaintiffs are moderately active, a daily caloric intake of between 2,400 to 2,600 calories meets their recommended caloric intake."); *see also* DE #43-4 (Dockendorff Affidavit).

Helmburg each swore, under oath, that they did not participate in meal planning or preparation, calorie-related decisions, or portion-size decisions. DE ##45-3 (Betts Affidavit), 45-4 (Helmburg Affidavit). They also swore that they never personally served food to Kilgore (including without gloves or a hair net, or food with stray sunflower seeds, or that was rotten or stunk). DE ##45-3, 45-4. This makes sense, given Kilgore's identifications of Betts as "Capt[ai]n of Security" and Helmburg as "Lt in charge of security". DE #5, at 1-2. Likewise, Martin swore that he did not participate in meal planning or preparation, caloric or portion-size decisions, and food service (under any circumstances) to Kilgore. DE #45-2. Colyer stated in her affidavit that she has "never instructed food service workers to water down recipes, serve small portions, or otherwise not follow KDOC menus." DE #43-2, at ¶ 7. She states she has "never instructed food service workers to serve rotten food or food with foreign substances in it to inmates." *Id.* She swears that she "did not serve Mr. Kilgore trays of food that were watered down or not properly portioned." *Id.* at ¶ 8. She did not serve Kilgore "a tray of food that contains a foreign substance of any kind in it, including chewed sunflower seeds" or "a tray of food that contains rotten food on it." *Id.* at ¶¶ 9-10. Kilgore did not respond, contest these statements, or present contrary evidence. *See generally Ward v. ARAMARK Corr. Food Serv.*, No. 3:09–CV–00802, 2012 WL 1833312, at \*4-\*5 (W.D. Ky. May 18, 2012) (dismissing claims that Aramark served insufficiently nutritious food).

Second, concerning the gloves or hair nets allegations, Plaintiff conclusorily charges that Colyer, Betts, and Helmburg "don[']t wear gloves to serve or hair nets." DE #5, at 3. He fails to muster any proof regarding when, and under what circumstances, these failures occurred. Kilgore presents no specifics on any alleged incidents. Further, Kilgore makes no attempt to satisfy the subjective component and alleges no injury caused by the purported actions. Betts,

Helmburg, and Colyer all swear under oath that they did not prepare food without gloves or hair nets. DE ##45-3, 45-4, 43-2. Supported by no proof, the claim, devoid of factual specifics and detail, summarily fails. *See Akin v. Partain*, No. 1:07–CV–106 (WLS), 2010 WL 2867905, at *2 (M.D. Ga. June 16, 2010) ("[P]laintiff has not alleged that he has suffered from any serious health problems or other injury as a result of . . . the server's failure to wear hair nets or gloves.") (recommending dismissal).

Third, regarding the alleged rotten and stinking food (including the chewed up sunflower seeds) allegations, Plaintiff simply alleges that Colyer, Betts, and Helmburg "have served food that is rotten and stinks." DE #5, at 3. Kilgore states that he "ha[s] found [c]hewed up sunflower seeds that have been spit into the food." *Id.* "The fact that the prison food occasionally contains foreign objects . . ., while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger*, 187 F.3d 638, at *2 (6th Cir. 1999) (table) (internal quotation marks and alteration removed) (citing *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)) (affirming dismissal when Plaintiff found a worm in her peanut butter). A plaintiff seeing "some particles of food on his plate at dinner . . . does not come within shouting distance of a constitutional grievance[.]" *George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007). Even a prisoner finding a dead rat in his soup was not actionable. *Wiley v. Ky. Dep't of Corr.*, No. 11–97–HRW, 2012 WL 5878678, at *8 (E.D. Ky. Nov. 21, 2012). Simply put, occasional or episodic incidents of contaminated food or unclean food areas are not constitutional violations. *Harrell v. Blue*, No. 4:09CV–P104–M, 2010 WL 693497, at *3 (W.D. Ky. Feb. 16, 2010) ("[T]o state a constitutional violation for unsanitary food preparation, a prisoner must do more than allege a single or isolated incidents of contamination."); *Tucker v. Rose*, 955 F. Supp. 810, 815-16 (N.D. Ohio 1997) (finding no violation with occasional presence of rodents in food preparation area); *Taylor v.*

*Luttrell*, No. 06-2522-An/V, 2008 WL 4065927, at *8 (W.D. Tenn. Aug. 27, 2008) (dismissing "Plaintiff's claims that there was grit or pebbles in his food on a single occasion, that once there was a trace of red sauce in his breakfast grits, that the meal trays are sometimes wet and water is trapped between layers of the trays"). Here, an alleged incident of chewed sunflower seeds in Plaintiff's food is analogous to prior examples in case law and thus also does not rise to the level of a constitutional violation under the applicable Eighth Amendment standard. Plaintiff utterly fails to provide specifics regarding his generalized rotten and stinking food claims; devoid of specifics, and without an effort to meet the subjective claim element, the allegations again fail.

Fourth, on an alleged failure to follow the Warden's orders regarding food service complaints, Kilgore charges: "[T]he warden Steve Haney tells Captain Betts to weigh the trays or take pictures Lt [H]elmburg and Betts state that it[']s not security's job to monitor the kitchen and so they don[']t follow the warden[']s orders." DE #5, at 3. For the same reasons as above, this nebulous claim fails. Kilgore makes no effort to satisfy cause of action elements and does not allege or establish that Helmburg and Betts's alleged failure to weigh trays or take pictures has injured him. He gives no details when these failures happened, or how the failures violate his rights. Again, because the claims are bereft of detail and thus empty of facts for adjudication or assessment, they fail.

Finally, regarding Defendant Martin, the Court makes the following specific observations. Supervisory liability does not lie in § 1983 actions unless Plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *see also Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). "Allegations of supervisory liability by themselves, moreover, will not do the trick. Instead of holding supervisors liable on a

theory of vicarious liability, the supervisors must have actively engaged in unconstitutional behavior to be liable under § 1983." *Mitchell v. Hininger*, 553 F. App'x 602, 607 (6th Cir. 2014) (internal quotation marks removed). "[S]imple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 902 (6th Cir. 2003). Further, a "prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *Womack v. Conley*, 595 F. App'x 489, 495 (6th Cir. 2014) (quoting *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006)).

Here, it is clear that Kilgore's allegations (Martin "is the state official in control of the defendants"; Martin failed to follow warden's instructions; Martin is "head of the programs department . . . and has failed to ensure that the defendants have treated the Plaintiff to at least a minimum of common decency"; Martin "failed to ensure that the plaintiff's medical needs w[]ere met[] [a]nd that the Aramark Corporation has served the proper portions when serving meals . . . [a]nd kept the kitchen clean and roach free, and that all staff and inmates wore hair nets and gloves when handling the food[ a]nd keeping the sunflower seeds out of the kitchen") do not succeed under the applicable standards. Kilgore alleges no incident, involving any of his panoply of claims, that Martin specifically encouraged or in which he directly participated. "A mere failure to act will not suffice to establish supervisory liability." *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013). Under oath, Martin avers that he was not personally involved in Kilgore's medical treatment or food administration. DE #45-2 (Martin Affidavit). Kilgore did not contest this or any of Movants' proof. Further, the Court has found no unconstitutional conduct by any subordinate. *See supra*; *see also* DE #46 (recommending dismissal of medical claims). To the extent Kilgore does make direct-action claims against Martin, for the reasons stated above, because any such claims are completely devoid of detail,

they fail.[13]

Quite simply, on this record, Kilgore has not demonstrated satisfaction of either the objective or subjective component of conditions of confinement Eighth Amendment claims.

---

[13] Alternatively, Defendants argue that Kilgore's complaint must be dismissed because he failed to fully exhaust administrative remedies. The Prison Litigation Reform Act's "exhaustion requirement applies to all inmate suits about prison life[.]" *Porter v. Nussle*, 122 S. Ct. 983, 992 (2002); *see also* 42 U.S.C. § 1997e(a). Exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 126 S. Ct. 2378, 2385 (2006) (emphasis in original). "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S. Ct. 910, 921 (2007); *see also id.* at 923-26 (not requiring total exhaustion and overturning *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005), relied on by Colyer). "When a prisoner's complaint contains a combination of exhausted and unexhausted claims, courts are to dismiss the unexhausted claims but retain and address the exhausted claims." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 500 (6th Cir. 2011). Any unexhausted claim dismissal is without prejudice. *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

The exhaustion "requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, *Brock v. Kenton County*, 93 Fed. Appx. 793, 798 (6th Cir. 2004); even when the state cannot grant the particular relief requested, *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L.Ed.2d 958 (2001); and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .' *Pack v. Martin*, 174 Fed. Appx. 256, 262 (6th Cir. 2006)." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011).

Here, Kilgore admits in his complaint that "the grievance process became non[-]ex[]ist[e]nt [and that there was] no grievance aide and the last one would not give out grievances and got fired." DE #5, at 7. However, Kilgore marked an alleged full appeal process, although he did not provide dates of compliance for any step. *Id.* "[B]ecause the failure to exhaust is an affirmative defense on which defendants bear the burden of proof, it may 'serve as a basis for dismissal only if raised and proven by the defendants.' *Kramer v. Wilkinson*, 226 F. App'x 461, 462 (6th Cir. 2007)[.]" *McClain v. Mason Cnty., Ky.*, ___ F. App'x ___, ___, No. 14-5983, 2015 WL 3824957, at *3 (6th Cir. June 19, 2015). On this discrete inquiry, the Court faces competing proof: Kilgore's assertion of completing appeals, with John Dunn's affidavit that Kilgore did not, DE #45-14 (Dunn Affidavit), and some limited grievance paperwork, DE #43-2, at 8-12. Defendants may have a stronger argument as to subject matter of the two attached grievances, but on this limited record, the Court does not "conclude that defendants established that [Kilgore] failed to exhaust his administrative remedies—which it was their burden to do." *McClain*, ___ F. App'x at ___, 2015 WL 3824957, at *3. It is worth remembering that, at this stage, the Court views the facts in the light most favorable to Kilgore. *See also Brown v. Croak*, 312 F.3d 109, 112-13 (3d Cir. 2002) (reversing exhaustion-based dismissal when evidence on exhaustion was ambiguous). Kilgore's claims otherwise and conclusively fail on the merits, which is the analysis the Court implements and follows.

Defendants met their burden. The burden then shifted to Kilgore, but he did not respond or present contrary proof. In short, Kilgore wholly fails to meet his burden under § 1983. Kilgore does not demonstrate proof adequate under Rule 56 to show that any moving defendant (1) deprived him of a minimal civilized measure of life's necessities, or (2) was deliberately indifferent to any serious need. Plaintiff bears the burden in this context, and he does not meet it on this record. Under Rule 56, Kilgore must show the existence of a fact question. *See Harrell v. S. Health Partners*, No. 4:10-CV-P21-M, 2011 WL 9296, at *1 (W.D. Ky. Jan. 3, 2011) ("The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." (quotation and internal quotation marks omitted)). Kilgore's only proof, such as it is, is the pleadings. The Complaint and Amended Complaint (as well as DE #18), though verified, really contain only naked conclusions on categorical allegations. Faced with specific contrary proof presented by Defendants, Kilgore made no response and has never supplied detail to or otherwise substantiated his claims. Defendants are entitled to judgment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' motions for summary judgment (DE ##43, 45).

\* \* \* \* \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. As defined by section 636(b)(1) and Rule 72(b), within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for *de novo* consideration by the District Court. The parties should consult the aforementioned statute and

rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 72(b) normally waives a party's right to review. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 13th day of October, 2015.

Signed By:
*Robert E. Wier* /s/ REW
United States Magistrate Judge